UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED

04 DEC -2 AM 8: 24

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

Deri Ventura Garcia,
    Petitioner,

-vs-

Crim. Case No. 97-082(SEC)

United States of America,
    Respondent.
_____/

MEMORANDUM OF LAW IN SUPPORT OF
HABEAS CORPUS MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE PURSUANT
TO 28 U.S.C.A. § 2255

COMES NOW, Deri Ventura Garcia, Petitioner (hereinafter "Petitioner") pro se moves this Honorable Court pursuant to 28 U.S.C.A. § 2255 to vacate, set aside, or correct his sentence and/or conviction hereto imposed.  As a matter of introduction, the petitioner respectfully submits that the events which transpired in the case subjudice constitute a denial of his Due Process Right as guaranteed by the Fifth Amendment and his right to effective assistance  of Counsel as promised by the Sixth Amendment both of the United States Constitution.  Petitioner further invokes the Supreme Court analysis of Haines v, Kerner, 404 U.S. 519 (1972) that his pleading is to be held to a lesser standard than pleading drafted by a lawyer.

JURISDICTION

The district court had original jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231, which vests in the United States District Court jurisdiction over offenses against the laws of the United States.

Under 28 U.S.C. § 2255, a convict in Federal Custody may ask the sentencing court to vacate, set aside, or correct his sentence on the ground that the court had imposed the sentence in violation of federal law, including of constitutional.  Brackett v. U.S., 270 F.3d 60, 63 (1st Cir. 2001).  In essence, section is a surrogate for the historic writ of habeas corpus.  Davis v. U.S., 417 U.S. 333, 344 (1974).

Petitioner contends that this court is required to conduct a full and fair evidentiary hearing in this matter because the facts alleged, if true, would justify relief, or where a factual dispute arises as to whether a constitutional right is being denied.  Procunier v. Atchely, 400 U.S. 446 (1971).

## STATEMENT OF THE CASE

On December 17, 1997, a grand jury sitting in the District
of Puerto Rico returned a six count superseding indictment charging,
inter alia, that from in or about the Summer of 1994 no earlier
than in or about June 1997, 79 individuals including petitioner
Deri Ventura, conspired to possess with the intent to distribute
cocaine, heroin, and marijuana, count one,  In violation of
21 U.S.C. §§ 841(a)(1) and 846, respectively.  Petitioner was
not charged in any other count in the six-count indictment.

Trial in this matter began on October 6, 1998, before Honorable
Salvador Casellas.  Motions for judgment of acquittal were
made at the close of the government's case (T.T. 12/8/98, pp.
18, 61-64) and renewed at the close of case (T.T. 12/14/98,
pp. 60-61).  The court denied the motion except as to a portion
of the money laundering count.  (T.T. 12/8/98, pp. 119-120).
The denials were reaffirmed at the close of the case. (T.T.
12/14/98, p. 61).  On December 18, 1998, petitioner was found
guilty by a jury of Count One.

On June 18, 1999, petitioner moved for a new trial. (DE-
2266).  July 9 and 23, 1999, the Court convened a hearing on
petitioner's motion for new trial.  On May 26, 2000, the Court
denied said Motion (DE-2710).  A reconsideration of the denial
of the new trial motion was requested (DE-2805).  October 5,
2000, the Court denied the request for reconsideration (DE-2805).

On December 19, 2001, petitioner was sentenced to a term
of 20 years on Count One, to be followed by three years supervised

iii

release.  A timely Notice of Appeal was filed on December 19, 2001.

The First Circuit Court of Appeals have reviewed appeals of several co-defendants.  These appeals have been published in U.S. V. Martinez-Medina, 279 F.3d 105 (1st Cir. 2002) and U.S. v. Jamie Garcia-Torres, 280 F.3d 1 (1st Cir. 2002).  This § 2255 Petition now ensues.

## STATEMENT OF THE FACTS

The charges and conviction in this case is the result of an alleged investigation predicated on the drug trafficking activities of Ms. Angela Ayala-Martinez and Jorge Serrano-Alicea, within the Souther part of Puerto Rico.  According to the authorites, the organization was responsible for distributions of "multi-kilograms" of quantities of controlled substances, (i.e. cocaine, heroin, and marijuana) within the Ponce area of Puerto Rico. As a result of said investigation, Ayala-Martinez was singled out as being the leader of the criminal organization in that area.

During the trial the government presented its case-in-chief against Mr. Deri Ventura-Garcia exclusively through the testimony of six-alleged co-conspirators, who alleged that they observed or been involved with drug dealings involving Mr. Ventura-Garcia.

Following the trial, on Dec. 18, 1999, the Petitioner was found guilty as  to Count One of the superseding indictment. The district court ordered the presentence report.  The U.S.

Probation Officer Zulma Basora prepared the petitioners PSR
and timely objections were submitted therein.

The presentence report for petitioner recommended an base
of level of 43 pursuant to the U.S.S.G. § 2D1.1(d)(1), because
at least one person was murdered in connection with the drug
conspiracy.

The guidelines prescribed a sentence of life imprisonment
for defendant's with an offense level of 43.  The PSR while
not making any specific determinations concerning the amount
and type of drugs involved in the conspiracy, it did note that
the conspiracy trafficked in "multi-kilograms" quantities of
cocaine.

The PSR also noted that Deri Ventura-Garcia aided and abetted
by others were involved in the murder of Mr. Miguel Vasquez.
U.S.S.G. § 2A1.1 was used as a cross-reference to provide a
base offense level of 43.

After a sleuth of filings by both parties on various issues
and requests for continues the sentencing of the petitioner
was finally set for November 3, 2000.  However, On June 26,
2000, the Supreme Court decided the seminal case of Apprendi
v. New Jersey, 120 S.Ct. 2348 (2000), which stood for the proposition
that "other than the fact of a prior conviction, any fact that
increases the penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury and proven beyond a reasonable
doubt." Apprendi, 120 S.Ct. at 2355.  The court had both parties
prepare memorandums of law regarding the effect of the Supreme

v.

Court's decision in Apprendi v. New Jersey, on the sentencing
options available to the court regarding the petitioner and
his co-conspirators.

After a few more requested continues, petitioner's sentencing
was finally set for December 19, 2001[1] before the Honorable
Judge Salvador Casellas.  During the sentencing hearing after
hearing both sides of the applicability of Apprendi, the court
ruled on the side of caution stating that it would be error
to use the murders to enhance the defendant's sentence without
a specific finding from the jury beyond a reasonable doubt.
Thus the Court eliminated any consideration of the murder from
its sentencing calculations.

Subsequently, the court on the basis of the revised PSI,
the PSR concluded that petitioner was responsible for 150 kilograms
or more of cocaine and recommended a base offense level of 38
for a conspiracy-wide calculation, and of course relevant conduct;
a two-point enhancement was assessed pursuant to 2 D1.1 (b)(1),
and three more points were given for Petitioner's role in the
offense as a supervisor.  The final recommendations to the court
by the PSR was forty-three (43).

Based on the revision of the PSR, the court recognized,
as it did with the murders, that Apprendi does not permit a

_____

[1]A new Presentence Report was revised on the same day
as petitioner was sentenced, and was not provided the 10-day
opportunity to review it in violation of Rule 32.

vi.

court to assume that a jury made a determination on specific
drug quantity or kind simply because the indictment charged
a multi-kilo quantity of various drugs, and that Apprendi requires
a jury determination that a defendant is guilty of every element
of the crime for which he is charged beyond a reasonable doubt.

However, despite the Court's understanding, the court stated
that it still retained the ability to determine the amount and
kind of drugs in this multi-drug conspiracy by a preponderance
of the evidence for the purpose of calculating the offense lvel
and relevant conduct under the guidelines.   Thus, the petitioner
was sentenced to twenty years as to Count One plus three years
supervised release.

## ISSUES PRESENTED FOR REVIEW

ISSUE I

> Whether the Trial Court erred in sentencing
> the Petitioner on Count One of the Superseding
> Indictment which charged Petitioner with knowingly
> conspiring to possess cocaine, heroin, and
> marijuana with the Intent to Distribute Same.

ISSUE II

> Ineffective Assistance of Appellate Counsel.

ISSUE III

> Whether Appellate Counsel was ineffective and the
> District Court erred by automatically attributing
> the Drug Quantity attributable to the conspiracy-
> as-a-whole to the Petitioner without first making
> specific individual findings as to Drug Amounts
> to Petitioner.

ISSUE IV

        Counsel was Ineffective of First Appeal by failing
to raise the issue of speculative drug amounts without
the identity of quantity or kind by the jury.


ISSUE V.

        Whether the District Court's findings of drug amount
and kind based on facts not found by the jury violated
his right to have every element essential to punishment
to be found Beyond a Reasonable Doubt.

    A.  Does the Sixth Amendment Rights announced
in <u>Blakely v. Washington</u>, apply to the 240-
month sentence imposed herein under the
United States Sentencing Guidelines.

viii.

ISSUE I          Whether the Trial Court erred in Sentencing
                 the Petitioner on Count One of the Superseding
                 Indictment which charged Petitioner with knowingly
                 conspiring to possess cocaine, heroin, and
                 marijuana with the intent to distribute same.

     Petitioner contends that his sentence must be vacated because
the jury's verdict in this multi-drug conspiracy was a general
verdict and exceeded the statutory maximum for the drug (marijuana)
carrying the lowest statutory penalty.

     Count One of the Supersending indictment charged the petitioner,
Deri Ventura Garcia, and 78 others in a conspiracy to distribute
cocaine, heroin, and marijuana in violation of 21 U.S.C. §§
841(a)(1) and 846 respectively.  The superseding indictment
read in relevant part:

               the defendant's did herein, knowingly, willfully,
               unlawfully, and intentionally combine, conspire,
               conferate and agree with others and with divers
               other persons to the grand jury known and unknown
               to commit offenses against the United States,
               to wit to knowingly and intentionally possess
               with the intent to distribute and distribution
               of multi-kilogram amounts of:  (a) cocaine, a
               Schedule II narcotic drug controlled substance;
               (b) heroin, a Schedule I  Narcotic drug controlled
               substance; and (c) marijuana, a Schedule I controlled
               substance, that is conspiracy to violate Title
               21, United States Code, Section 841(a)(1).  All
               in violation of Title 21, United States Code Section
               846.

     At the trial of Angela Ayala Martinez, Manuel Perez-Colon,
Manuel Garcia Torres, and Res Garcia Torres, Deri Ventura, Walter
Batiz, and Marcos Martinez Mendia, the trial court provided
piece meal instructions to the jury concerning Count One of
the Superseding Indictment. (T.T. 12/18/98, pp. 139-143).  The

                              1.

trial court told the jury that it could find the petitioner guilty on the
conspiracy count if it found that the petitioner conspired to distribute
a controlled substance. (Id. 139 - 142). the jury was then instructed on
possession (Id. 142 - 143). Lastly the jury was instructed <u>as a matter of
law that cocaine, heroin, and marijuana are controlled substances</u>. (Id.
143). The court submitted a general verdict to the jury, and the jury returned
a general verdict finding the petitioner and the other defendant's guilty
of the conspiracy count. Petitioner was sentenced to 240 months on the conspiracy
count. Neither the government nor ineffective counsel requested a special
verdict as to the object of the conspiracy.

Petitioner now argues, where ineffective counsel failed to do so, that
it is "impossible to determine which controlled substance the jury may have
found was the object of the conspiracy." Petitioner contends that the jury
could have reasonably found that the object of the conspiracy was marijuana,
just as easily as it could have found any of the other controlled substances.
Therefore, petitioner avers that his sentence imposed by the district court
should not have exceeded that statutory maximum for marijuana. As trial
counsel, who was also appellate counsel, did not object to the submission
of a general verdict, request a special verdict, nor argued for a lesser
sentence because of a multi-drug conspiracy sets the premise for petitioner
ineffective assistance claims.

The U.S. Supreme Court has previously addressed a similar situation
regarding the sentencing issue in question in <u>Edwards v. U.S.</u>, 523 U.S. 511,
118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). The defendant's in <u>Edwards</u> were
charged with conspiracy to distribute both cocaine and cocaine base. <u>Edwards</u>,
118 S.Ct. at 1476. After close of evidence, the district court instructed
the jury that it could find the defendants guilty if it found that they had

conspired to distribute either cocaine or cocaine base.  The jury returned
a general verdict of guilty, without any indication of whether it found the
conspiracy to be directed to cocaine, cocaine base, or both.
The district court then sentenced the defendant's based on its finding that
their conduct had involved both cocaine and cocaine base.

Before the Supreme Court, the defendants argued that, because the jury's
general verdict may have been based on a cocaine-only conspiracy, the district
erred in sentencing them under the more stringent guidelines applicable to
cocaine base.

In a pre- Edwards ruling the first circuit Court of Appeals in U.S.
v. Melvin, 27 F.3d 710 (1st Cir. 1994) foreseen the Supreme Courts' vision
in Edwards.  In Melvin the defendants were charged with, and convicted of,
possession of a firearm in connection with a crime of violence.  However,
the jury verdict failed to designate which of several firearms alleged to
be in their possession were involved.  The penalty in that case ranged from
possession of machine guns, carrying a mandatory minimum 30 year sentence,
to possession of handguns, carrying a minimum 5 year sentence.  The appellate
court resolved the sentencing issue by affirming the defendants sentence
as the lowest it cold be, that of a conviction for possession of a handgun
(ID., 27 F.3d at 715).

In a post Edwards ruling and should also provide as persuasive authority,
the Fourth circuit's decision of U.S. v. Rhymes, 196 F.3d 207 (4th Cir. 1999)
will be instructive to this Court.  In Rhymes, the defendant's were charged
with conspiracy to possess with the intent to distribute cocaine, crack,
heroin, and marijuana.  The district court submitted a general verdict as
to the conspiracy count and used the conjunction "OR" to indicate to the

jury that it could find a defendant guilty of the conspiracy count if it
had found that the defendant had conspired to distribute heroin, or cocaine,
or crack, or marijuana.  In that case, neither the defendant's nor the government
requested a special verdict as to the object of the conspiracy.  The Rhymes
court followed the Sixth Circuit.  U.S. v. Dale, 178 F.3d 429 (6th Cir. 1999)
and concluded, in the absence of a special verdict, that it could not sentence
beyond the maximum sentence for the least serious of the four alleged controlled
substances, i.e., marijuana.  Rhymes, 196 F.3d at 239.  Accordingly, the
applicable precedent from the First Circuit -- Melvin -- is consistent with
the view expressed by the Supreme Court in Edwards, as discussed above.

The facts of the current case fall squarely within the ambit of Melvin,
Rhymes, and Dale.  Here, the district court properly instructed the jury
that it could find a defendant guilty on Count One if the jury determined
that the defendant's had conspired to possess with the intent to distribute
a controlled substance. i.e., cocaine, heroin, marijuana (T.T. 12/18/99,
pp. 139 = 143).  The jury then returned a general verdict finding the petitioner
and the other defendants guilty of count one.  (T.T. 12/18/98, pp. 7-9).
The government did not request a special verdict form, as was its obligation.
See U.S. v. Barnes, 158 F.3d 662, 669 (2nd Cir. 1998)("It's the government's
responsibility to seek special verdicts.").  With this general verdict, it
is impossible to determine on which statutory object or objects -- sales
of cocaine, heroin, or marijuana -- the conspiracy conviction was based.
The First Circuit foresaw the constitutional problems that Edwards addressed,
associated with multi-conduct conspiracies with varying penalties, depending
on acts committed in Melvin and affirmed the defendant's sentence by refusing
to impose the 30-year sentence mandated by § 924(c), for the use of a gun,
instead of imposing only the  5-year term set for less serious firearm due

4.

to the jury's general verdict.  <u>Melvin</u>, 27 F.3d at 716.

The record clearly shows that petitioner was found guilty by the jury, by way of a general verdict, of a multi-drug conspiracy, i.e., cocaine, heroin, and marijuana without the benefit of a special verdict, thus petitioner's sentence of the most lethal of the three drugs, cannot stand constitutional scrutiny because he was sentenced beyond the statutory maximum for a marijuana only conspiracy and should therefore be vacated, and petitioner sentenced to the least of the three drugs, marijuana.

<u>ISSUE II</u> --

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In <u>Evitts v. Lucey</u>, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Supreme Court made clear that "the right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right." <u>Lattimore v. Dubois</u>, 152 F.Supp.2d 67, 84 (D. Mass 2001). It is well learned that the Supreme Court applies the now familiar framework enunciated in <u>Strickland v. Washington</u>, 466 U.S. ___, 104 S.Ct. 2052, ___ L.Ed.2d ____ (1984) to claims of ineffective assistance of appellate counsel. <u>Smith v. Murray</u>, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), <u>U.S. v. Victoria</u>, 876 F.2d 1009 (1st Cir. 1989).  Thus, to prevail on a claim of ineffective assistance, petitioner must show that appellate counsel's performance was both deficient and prejudical to his defense.  <u>Strickland</u>, 466 U.S. at 687.

(i)  Deficient Performance

Deficient performance is representation that falls below an objective

standard of reasonableness under prevailing professional norms when considering all the circumstances. Strickland, 466 U.S. at 688. As there are "countless ways to provide effective assistance in any given case," courts should indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance. Id. at 689. To overcome this presumption, the petitioner must present evidence that appellate counsel's failure to raise a claim was not an exercise of sound appellate strategy. Lattimore v. Dubois, 152 F.Supp.2d at 85. This will not be a high hurdle for the petitioner to overcome.

The critical issue here, that must overcome that presumption of proper professional assistance, is whether counsel omits issues that are considerably stronger than those presented. Smith v. Robbins, 528 U.S. ___, 288, 120 S.Ct. 746.

The record is clear that: Counsel inexplicably ignored a significant and obvious issue -- that the trial court imposed the most severe punishment in a multi-drug conspiracy involving three (3) different drug types, cocaine, heroin, and marijuana, and the jury returned a general verdict failing to identify the drug that the petitioner conspired to possess and distribute -- in favor of one less worthy claim.

As elaborated in the preceding claim, in a multi-conduct conspiracy with varying penalties, depending on the acts committed, the court offends the constitution by imposing the harsher sentence without the benefit of a special verdict. This constitutes plain error and vacature of petitioner's sentence under the law of the land Edwards v. U.S., 523 U.S. 511, and the First Circuit precedent U.S. v. Melvin, 27 F.3d 710 (1st Cir. 1994). There was no conceivable strategic reason to drop this issue on appeal.

6.

Rather, Lydia Lizarribar, petitioner's trial, sentencing, and appellate attorney chose to raise a lonely claim that the district court erred in denying Petitioner's Motion for new trial instead of a general verdict claim that was readily apparent from the face of the record and constituted plain error. Counsel certainly could have included this issue "Along with" the Brady claim she raised on appeal.

PREJUDICE

To satisfy the prejudice prong of the Strickland test, a petitioner must show that there is a "reasonable probability" that but for counsel's errors, the result of the proceedings would have been different. Prou v. U.S., 199 F.3d 37, 48-49 (1st Cir. 1999). In the appellate context, the degree of prejudice required by Strickland will be met upon a showing by the petitioner that absent appellate counsel's deficiencies, there is a "reasonable probability" that the outcome of an appeal to the First Circuit Court of Appeals would have been different.

Many Circuit Courts as well as the Supreme Court that have addressed this issue have held that the district courts commit errors when it imposes the statutory maximum sentence to conspiracy to distribute (cocaine) on Petitioner charged with single conspiracy to distribute various drugs, i.e., cocaine, heroin, and marijuana, in absence of a specific verdict form was plain. Edward v. U.S., 523 U.S. 511 (1998); U.S. v. Allen, 302 F.3d 1260 (11th Cir. 2002); U.S. v. Rhymes, 196 F.3d 207 (4th Cir. 1999); U.S. v. Dale, 178 F.3d 429 (6th Cir. 1999); U.S. v. Melvin, 27 F.3d 710 (1st Cir. 1994). Here, petitioner's sentence for conspiracy to distribute cocaine was 235 months longer than the 5-year statutory maximum for conspiracy to distribute marijuana, thus creating potential manifest miscarriage of justice.

Therefore, Petitioner has made a sufficient showing that had counsel raised this meritorious claim on his first appeal, there is a reasonable probability that the outcome of his direct appeal would have been different.

ISSUE III

> Whether Counsel was Ineffective and the District
> Court erred by automatically attributing the Drug
> Quantity Attributable  to the Conspiracy as a whole
> to the Petitioner without first making specific
> individual findings as to drug amount to Petitioner.

The district court erred in imposing a twenty-year statutory maximum sentence, see 21 U.S.C. § § 841(a)(1), 846, without making a specific finding that he -- rather then the charged (multi-drug) conspiracy -- was accountable for a particular quantity or kind of drug.  U.S. v. Colon-Solis, 354 F.3d 101 (1st. Cir. 2004).

As previously noted, the petitioner along with a number of others were charged with conspiracy to distribute numerous narcotics (cocaine, heroin, and marijuana), as an alleged member of Angela Aylaya Martinez drug ring. During the trial, various government turn-coats testified that this conspiracy consisted of cocaine, heroin,  and marijuana.  At close of the government's case-in-chief, no special jury verdict form was submitted to the jury due to the various drug types contained in count one of the superseding indictment. The jury returned a general verdict of guilty on Count One without identifying drug kind or quantity as the object of the drug conspiracy.

The district court purportedly arrived at a base offense level determin-ation of 38 by adopting the drug quantity calculations set out in the petitioner's

8.

objections in the PSR.  Petitioner objection to the court was that:

> <u>Counsel:</u> "Your Honor we still up to now, we take exception as
> to the quantity of drugs, the fact findings.  We believe that
> this defendant your Honor, should make a specific finding as to
> a specific amount that has been proven.  Even though it is not
> beyond a reasonable doubt, but even with a preponderance of the
> evidence, which is not speculative, should establish that his
> participation, within this conspiracy is really above the 150
> Kilograms."

December 19, 2001, pg. 19.  The court then tuned-out the specific findings

as to a specific amount proven, but instead presented a conspiracy-as-a-whole

assessment.  The court responded:

> <u>Court:</u>  let me set forth the following.  The record in this case,
> the transcript, what I heard and saw during the trial this drug
> conspiracy distributed and possessed hundreds if not thousands
> of kilos of cocaine, multi-kilo quantities of heroin and hundreds
> of pounds of marijuana at each drug point and there were several
> on which we received evidence and it was presented to the jury,
> hundreds of kilos of crack cocaine were sold.  At no time during
> the trial did anyone question the amount of drugs involved and
> sold by this conspiracy.  (Dec. 19, 2001, page 19-22).

The court did not consider that multi-kilo quantities of heroin, and hundreds

pounds of marijuana was also alleged sold at each drug points (Id. at 19), or

that the statements as to drug amount, drug deliveries, drug shipment disseminated

by co-conspirators, by government witnesses, some not involved in the conspiracy,

had no collaberation as connecting any specific drug amounts or kinds that

could be attributed to the petitioner  (ID. at 22).  The court surmised its

findings to the preponderance of the evidence and stated:  . . . "standing

alone, he participated in picking up a shipment for Ayala, for several bales

of cocaine."  (Id. at 22).  Also what is noted from the record is that the

first mention of the petitioner into the Ayala Martinez conspiracy, was in

1996.  However, the conspiracy is alleged to have started sometime in 1994.

Thus, the Petitioner could not be held accountable for any acts involving

the Ayala multi-drug conspiracy that occurred prior to his involvement in 1996. U.S. v. O'Campo, 973 F.2d 1015 (1st Cir. 1992).

Therefore, the courts determination as to drug amount (and kind) was speculative at best U.S. v. Rivera-Maldonado, 194 F.3d 224, 228-29 (1st Cir. 1999), and the courts speculations and preponderences cannot conclude to drug amounts (or kind) to the conspiracy-as-a-whole and automatically shift the entire amount alleged involved to the petitioner without a defendnat specific determination as to drug quantity. Colon-Solis, 354 F.3d at 103.

A statutory maximum is made potentially available by a finding that the conspiracy as a whole handled (or at least contemplated) the necessary triggereing amount. ID. But to apply the statutory maximum to a particular co-conspirator, the sentencing court must make a specific finding, supported by a preponderance of the evidence, ascribing the triggering amount to that co-conspirator. Id. Also see Derman v. U.S., 298 F.3d 34, 43 (1st Cir.) dert denied 537 U.S. 1048 (2002). This court has long required such a defenant specific determination as a benchmark for individualized sentencing under the guidelins. U.S. v. Bradley, 917 F.2d 601, 604 (1st Cir. 1990); Colin-Solis, supra.

That principle is dispositive in this case. Petitioner specifically objected to the drug quantities attributed to him (See(5.Tr. Dec 19, 2001, page 19)(150 kilograms of cocaine) to trigger the statutory maximum pursuant to § 21 U.S.C § 841(b)(1)(c). The Court prescribed this amount from conspiracy wide persepective. However that provision cannot be applied in this case without an individualized finding that the triggering amount was attributable to, or foreseeable by him. Accordingly this Court should findas the first Circuit did in Colon-Solis and remand for resentencing.

10.

Counsel appellate performance was deficient by failing to raise this issue, and if were not but for her negligence there is a reasonable probability that had the First Circuit reviewed this Claim the outcome of his appeal would have been different.'

ISSUE   IV

COUNSEL WAS INEFFECTIVE ON FIRST APPEAL BY FAILING
TO RAISE THE ISSUE OF SPECULATIVE DRUG AMOUNTS
WITHOUT THE IDENTITY OF QUANTITY OR KIND BY THE JURY

Under the U.S.S.G. § 2D1.1(G), the base offense level ("BOL") depends in large part upon the total durg quantities involved in an offense.  Insofar as the quantities seized underrepresent the demonstrated scale of a drug distribution conspiracy, however, the sentencing court is to "approximate the total quantities." U.S.S.G. § 2D1.1 comment (N.12).

Petitioner contends that the ultimate drug-quantity finding made by the district court must be set aside because it is based on speculative estimates derived from a general verdict returned by the jury, and improper extrapolations by the sentencing court.  Since the instant offense involved various controlled substances, i.e., cocaine, heroin, and marijuana, the sentencing court was required to determine both amount and kind of controlled substances for which the defendant should be held accountable and impose a setnence that varied depending upon amount and kind.  Edward  v. US., 523 U.S. 511, 118 S. CT. 1475, 1477, 140 L.Ed.2d 703.  A reasonable reliable differentiation among the various drugs types is particularly important in this case, since much more severe sentencing ranges are prescribed in crack-cocaine distribution offenses for which the applicable offense level, see U.S.S.G. § 2D1.1(c)(8)-(14), may increase with each additional gram.  U.S. v. Sepulveda, 15 F.3d 1161, 1198 (1st Cir. 1993), thant there is for marijuana.  U.S.S.G. § 2D1.1;

11.

Also, a drug involved in this multi-drug conspiracy.

Although the sentencing court may rely on reasonable estimates and averages in arriving at its drug quantity determination, their probably accuracy must be found on adequate indicia of reliability <u>U.S. v. Rivera-Maldonado</u>, 194 F.3d 224, 228 (1st Cir. 1999); <u>U.S. v. Webster</u>, 54 F.3d 1, 5 (1st Cir. 1995), and demonstrable record support, <u>U.S. v. Marreo-Ortiz</u>, 160 F.3d 768, 780 (1st Cir. 1998)(absent particularized findings to support the assigned BOL, we have no principle choice but to vacate the sentence and remand for further findings and resentencing. <u>U.S. v. Welch</u>, 15 F.3d 1202, 1215 (1st Cir. 1993), <u>U.S. v. River-Maldonado</u> supra. Nor may a criminal sentence be predicated simply upon conclusory prosecutorial assessments that the extensiveness of the conspiracy suggested a substantial amount of narcotics business. See <u>Marreo-Ortiz</u>, 160 F.3d at 779-780 (we cannot uphold a drug quantity calculation on the basis of hunch or intuition). <u>Rivera v. Maldonado</u> 194 F.3d at 229. Counsel Lizarribar was ineffective on first appeal for failing to raise this meritorious issue. What also cannot be ignored is the fact that counsel was counsel of record for the appellant <u>Rivera-Maldonado</u>, 194 F.3d 224 and earned a remand for raising this issue.

The district court purportedly arrived at its BOL 38 determination by adopting, the <u>sua sponte</u> findings by the Probation Department that the drug involved for the purposes of BOL calculations was cocaine, notwithstanding the fact that heroin and marijuana was also alleged involved in the drug conspiracy.

The court contributed to the ambiguity of the BOL determination by its findings that "this drug conspiracy distributed and possessed hundreds if not thousands of kilos of cocaine, multi-kilo quantities of heroin, and

12.

hundreds of pounds of marijuana . . . . and it was presented to the jury,
hundreds of kilos of crack cocaine were sold . . . ." (S.Tr. Dec. 19, 2001,
page 19). See Rivera v. Maldonado, 194 F.3d at 229, citing U.S. v. Miele,
989 F.2d 659, 668 (3rd Cir. 1993)("A determination that the drug activity
was substantial does not translate readily into a specific drug quantity
finding, which is the ultimate issue for sentencing purposes.").

Moreover, being that this was a "dry mouth" conspiracy watered only
by the paid testimony of government witnesses serves to be most problematic.
During the trial the government witnesses testified that many different drug
types and quantities were involved in this conspiracy, but the court via
the Probation Department found for the purposes of their determination cocaine
to be their drug of choice. There was no stated conversions of drug in the
PSR, or metric breakdowns.

The burden to establish drug amount is on the government. U.S. v.
Barnett, 989 F.2d 546, 553 (1st Cir. 1993). The First Circuit in Barnett
held that it must be determined whether [the district] presented sufficient
reliable information to permit the court reasonably to conclude that (Appellant's)
were responsible for a quantity of drugs at least equal to the quantity threshold
for the assigned BOL." Id. In the instant case counsel never raised on
first appeal that the record never enabled the appellatee court to uphold
the drug-type apportionment methodology articulated by the district court.

For example the district court summed up the government witnesses testimony
that many different drugs were disseminated and were sold at various drug
points (S.Tr. Dec 19, 2001, pg 19). But for the purposes of BOL calculations
the PSR came to one overall drug quantity, with their drug of choice, cocaine.

13.

Because of the varying drug types, that drug, cocaine, and that drug amount of cocaine, 150 kilos to provide petitioner with a BOL of 38 is at best speculative. This is because there is no discernable quantitive breakdown among the three substances dispensed at the La Cantrea drug point (or the conspiracy as a whole for that matter), or a use of the conversion table to manifest one drug after it metric breakdown.

Absent adequate particularized findings or discernible record support for the BOL of 38, assigned by the PSR and adopted by the district court, in conjunction with the general verdict as to the identity of an identifying drug to which the PSR and the court should base their drug quantity and kind calculations on Petitioner's sentence must be vacated and remanded for resentencing. U.S. v. Maldonado, 194 F.3d 224, 233 (1st Cir. 1999).

It cannot be ignored that counsel Lizarribar (Petitioner's trial and appellate counsel) knew or should have known that this was a valid issue to raise on first appeal, because she addressed this same issue in Rivera-Maldonado in 1999, two years prior to petitioner's sentencing in 2001. Counsel should have known at the very least that "drug quantity has a dramatic leverging effect," Sepulveda 15 F.3d at 1198, and special care must be taken to ensure that particularized drug-type quantity findings are predicated on reliable information. But when significant uncertainty exists, those findings err on the side of caution. U.S. v. Eke, 117 F.3d 19, 24 (1st Cir. 1997).

Deficiency of appellate counsel can be demonstrated by showing that counsel failed to raise an issue that was plain and obvious to her from her previous experience with the same issue. And there is a reasonable probability that had counsel raised this issue the outcome of his appeal would have been

14.

different.

ISSUE  V

> WHETHER THE DISTRICT COURT'S FINDING OF DRUG
> AMOUNT AND KIND BASED ON FACTS NOT FOUND BY
> THE JURY VIOLATED HIS RIGHT TO HAVE EVERY ELEMENT
> ESSENTIAL TO PUNISHMENT TO BE FOUND BEYOND A
> REASONABLE DOUBT.

In light of the Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the district court re-scheduled petitioner's sentence to have his PSR re-structure to eliminate the U.S.S.G. § 2A1.1 cross-reference regarding First Degree Murder which called for a base offense level of 43.

On December 19, 2001, on the day of petitioner's sentencing the court explained his findings regarding the parties Apprendi memorandum.  The Court noted as follows:

> Regarding the murders, the court finds that by the preponderance
> of the evidence standard that defendant participated in the
> murders.  However, we agree with the defendants and to meet
> the Constitutional safeguards provided by Apprendi, the jury
> should have been instructed to make a specific findings regarding
> the murders if we are to use them in sentencing.  If this were
> to have taken place the defendant's could have been sentenced
> beyond the statutory maximum provided by statute.  However,
> since it did not take place the court believes it would be
> error to use the murders to enhance defendant's sentence without
> a specific finding from the jury beyond a reasonable doubt.

(S.Tr. Dec. 19, 2001, page 3).

Once the PSR was revised the Probation Department came to a base offense level conclusion of 38 because they believed that the offense for which petitioner was convicted involved 150 kilograms or more of cocaine.  This is particularly troublesome because the only language in the indictment was that the offense

15

was a multi-drug conspiracy involving cocaine, heroin, and marijuana.  In finding the defendants guilty at trial in the absence of a special jury verdict form, the jury made no specific findings that the conspiracy involved 150 kilograms or more of cocaine, heroin, or marijuana beyond a reasonable doubt. Nevertheless, the court felt that it retained the discretion to "determine the amount of drugs and kind by a a preponderance of the evidence for purpose of calculating the offense level and relevant conduct." (SEE S.Tr. Dec. 19, 2001, page 5), despite the fact a jury was required to make a determination that a defendant is guilty of every element of the crime for which he is charged beyond a reasonable doubt.  The court sua sponte, found that the drug of the multi-object conspiracy, was cocaine, and the amount involved was 150 kilograms or more.  Petitioner was sentenced to 20 years.  This drug, cocaine, and amount of 150 K was not specifically found by the jury nor charged in petitioner's indictment.

Petitioner states that because there was no identifying drug quantity out of the three (3) drugs labeled in the indictment as being the object of the conspiracy, the maximum sentence that the court could have imposed in this case without upward departure had the court not made any findings concerning drug quantities of cocaine, would have been 60 months, giving the petitioner's base of level of 26, U.S.S.G. § 2D1.1(c)(1), 26 is the base of level when the defendant possessed at least 100 but less than 400 kilos of marijuana, and the petitioner's criminal history. U.S.S.G. § 4A1.1(a) through (e) . . 2(c)(1).

A. Does the Sixth Amendment Right announced in <u>Blakely v. Washington</u> apply to the 240 month sentence imposed herein under the United States Sentencing Guidelines.

16.

While the Supreme Court decides whether Blakely v. Washington, 542
U.S. ____ (2004), is applicable to the Federal Guidelines, upon close scrutiny
one will see that there is no principled distinction between the Washington
Sentencing Reform Act at issue in Blakely and the United States Sentencing
Guidelines. While the Blakely court only addressed the Washington State
Sentencing scheme, the manner in which the majority defined the "statutory
maximum" should compel this court to conclude that its reasoning applies
with equal force to the U.S.S.G.

The Federal Sentencing Guidelines scheme created by the 1984 Sentencing
Reform Act is remarkably similar to the Washington State Sentencing Scheme.
In Blakely there were two state sentencing schemes at issue. The statute
setting the sentence ranges for each class of felony offenses in Washington
designated ten years as the maximum punishment for Blakely's 2nd degree kidnapping
offense. Wash.Rev. Code.Ann. § 9A.20.021(1)(b) 124 S.Ct. at 2535. Washington
Sentencing Reform Act, however specified in a separate statutory provision
a "standard range" of 49 to 53 months. The trial court could only exceed
this range if the court found a "substantial and compelling reason justifying
an exceptional sentence." 124 S.Ct. at 2535. Under Washington's Sentencing
Reform Act there were several potential factors that would support a judge's
decision to depart from the presumptive range. Id. In Blakely, the trial
court found that Blakely had acted with "deliberate cruelty," one of the
enumerated factors justifying an exceptional sentence. Id.

In ruling that the Sixth Amendment right to a jury trial rendered Blakely's
exceptional sentence unconstitutional, the Court did not focus on the ten-
year statutory maximum , but rather the "standard range" of 49 to 53 months
established by the Sentencing Reform Act. Id. at 2537.

17.

The Court held that the trial judge's sentence of 90 months violated
this principle because it was not justified "solely on the basis of facts
admitted by the guilty plea" but rather involved judicial fact-finding of
aggravating factors which increase the sentence.  Id.

The petitioner was similarly subject to dueling statutorty maximums.
Under 21 U.S.C. § 841(b)(1)(c), he faced a potential sentence of 0 to 20
years, based on the court's finding of 150 kilos or more of cocaine.  However,
Congress also provided, through its implicit adoption of U.S.S.G. § 2D1.1(c),
a differing range of presumptive sentences based on the quantity of drugs
including cocaine, heroin, and marijuana.  Here, the district court's factual
finding were that the petitioner was responsible for 150 k or more of cocaine.
Petitioner then faced a base offense level of 38, plus a 2-level enhancement
as a dangerous weapon was possessed, and 3 for petitioner's role in the offense
U.S.S.G. § 3B1.1(b), for a final base offense level 43, with a sentence of
life.  Solely on the basis of the four corners of his indictment which charged
a multi-kilo distribution of 3 different drug type, and the
jury's verdict lack of identity as to which drug was the object of the conspiracy
"without any additional findings," Blakely 124 S.Ct. at 2537, petitioner's
base offense level would have been 26 (using the court number of 150 kilos),
with a sentencing range of 63 to 79 months for the least penalized drug marijuana,
as a statutory maximum.  Blakely's definition of "statutory maximum" as "the
maximum sentence a judge may impose solely on the basis of the fact reflected
in the jury verdict or admitted by the defendant," 124 S.Ct. at 2537.  Here
the jury's verdict reflected a general verdict of 3 different drug types
all of which have varying penalty consequences.  Without any further findings
the court was only authorized to levy a 5-year sentence for marijuana.  Instead,
the district court imposed a 240 month sentence, which far exceeded the maximum

sentence that the district judge could have imposed simply on the basis of the jury verdict. This directly parallels the sentencing process held unconstitutional in Blakely.

Succinctly stating, being that the district court did recognize that petitioner's Constitutional Safeguards involving the proper imposition of a lawful sentence would have been offended had the court enhanced the petitioner's sentence based on facts not found by the jury nor charged in his indictment regarding the murders beyond a reasonable doubt, the court must still retain that same keen sense of recognization, that the additional finding it made regarding drug amount and kind without an identifying jury verdict offended the same constitutional safeguards spoke about in Blakely. Remand for re-sentencing is required in this cause.

CERTIFICATE OF SERVICE

I, Deri Ventura-Garcia, hereby certify that the statement of facts in the accompanying motion are true and correct to the best of my knowledge and that the statements made on information and belief are true to the best of my knowledge and belief.  28 U.S.C. § 1746.

dated: 11/3/04

Respectfully submitted,

*Deri Ventura Garcia*
Deri Ventura-Garcia
#16162-069
FCI Edgefield
P.O. Box 725
Edgefield, SC  29824